Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.  
Yah-Ya MANDELAKA, Petitioner,  
v.  
Robert SNYDER, Warden, and M. Jane Brady, Attorney General of the State of Delaware, Respondents.  
**No. C.A. 96-457-SLR.**

May 22, 1998.

Yah-Ya Mandelelaka, petitioner pro se.

Thomas E. Brown, Deputy Attorney General, of the Department of Justice, Wilmington, Delaware, for respondents.

**MEMORANDUM OPINION**

ROBINSON, J.

**I. INTRODUCTION**

***1** Petitioner, Yah-Ya Mandelelaka, is a state prisoner incarcerated at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. Respondent Robert Snyder is the warden of DCC. Following a jury trial in August 1987, petitioner was convicted of first degree burglary, first degree kidnapping, and three counts of unlawful sexual intercourse in the Superior Court of the State of Delaware. He is currently serving a 210 year sentence. On September 13, 1996, petitioner filed an application pursuant to 28 U.S.C. § 2254 for habeas corpus relief. (D.I.2) In his § 2254 application, petitioner sets forth six grounds for relief. These issues have been fully briefed. (D.I.2, 3, 11) For the following reasons, the court shall deny the relief requested by petitioner.

**II. BACKGROUND**

Petitioner was arrested on January 15, 1987 and was charged with one count of burglary in the first degree (11 Del.C. § 826), one count of kidnapping in the first degree (11 Del.C. § 783A), three counts of unlawful sexual intercourse in the first degree (11 Del.C. § 775), and possession of a deadly weapon during the commission of a felony. He was subsequently indicted on March 3, 1987 on all charges except possession of a deadly weapon during the commission of a felony. With respect to the counts of unlawful sexual intercourse the indictment read as follows:

COUNT III. A FELONY  
UNLAWFUL SEXUAL INTERCOURSE FIRST DEGREE in violation of 11 *Del.C.* § 775, a class A Felony.

[Petitioner] on or about the 15th day of January, 1987, in the County of New Castle, State of Delaware, did intentionally engage in sexual intercourse with Nereida Ortiz by inserting his penis into her vagina, without the victim[']s consent and during said intercourse did display what appeared to be a deadly weapon, the defendant was not the victim[']s voluntary social companion on the occasion of the crime.

COUNT IV. A FELONY  
UNLAWFUL SEXUAL INTERCOURSE FIRST DEGREE in violation of 11 *Del.C.* § 775, a class A Felony.

[Petitioner] on or about the 15th day of January, 1987, in the County of New Castle, State of Delaware, did intentionally engage in sexual intercourse with Nereida Ortiz by inserting his penis into her anus, without the victim[']s consent and during said intercourse did display what appeared to be a deadly weapon, the defendant was not the victim[']s voluntary social companion on the occasion of the crime.

COUNT V. A FELONY  
UNLAWFUL SEXUAL INTERCOURSE FIRST DEGREE in violation of 11 *Del.C.* § 775, a class A Felony.

[Petitioner] on or about the 15th day of January, 1987, in the County of New Castle, State of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 2

Delaware, did intentionally engage in sexual intercourse with Nereida Ortiz by inserting his penis into her mouth, without the victim[']s consent and during said intercourse did display what appeared to be a deadly weapon, the defendant was not the victim[']s voluntary social companion on the occasion of the crime.

(D.I. 13, Appendix to Appellant's Opening Brief dated Feb. 2, 1993 at A13-14)

**\*2** A jury trial was held August 3-5, 1987 in the Delaware Superior Court. The following relevant facts were adduced at petitioner's trial. [FN1] At approximately 2:30 am on January 15, 1987, Nereida Ortiz ("Ortiz") was awakened by knocking on her door. When she answered the door, she found petitioner, who was looking for her boyfriend. Ortiz testified that she knew petitioner, who had been to the apartment on prior occasions looking for her boyfriend, but had never dated him. When Ortiz told petitioner that she did not know of her boyfriend's whereabouts, petitioner asked if he could come in and then forced his way into the apartment. An argument followed, during which petitioner kept asking Ortiz why she was treating him the way she was and attempted to persuade her to let him stay and talk and ingest drugs with him.

> FN1. The court draws the following facts from a number of sources: the Delaware Supreme Court's findings in its decision on petitioner's direct appeal in 1989, *Murrary v. State,* 565 A.2d 280, 1989 WL 88691 (Del. July 19, 1989) (unpublished opinion); the Superior Court's findings in its decision on petitioner's motion for post conviction relief in 1992, *State v. Murray,* No. IN87-01-0586 R1, 1992 WL 240490 (Del.Super.Ct. Sept. 4, 1992); and this court's independent review of the parties' briefs.
> The defense was consent. Based on the verdict, it is obvious the jury accepted the victim's testimony. The facts are stated on that basis.

At some point, petitioner grabbed Ortiz around the neck and pointed what appeared to be a small handgun [FN2] at her. He assaulted Ortiz, punching her in the mouth, and demanded that she put her hands behind her back in order to be handcuffed. Then petitioner ordered Ortiz to perform oral sex on him; feeling threatened, Ortiz complied. Next, petitioner had Ortiz move to the sofa and lie down; he then proceeded to have vaginal intercourse with her. Finally, petitioner had Ortiz get up and lean over the sofa; he then engaged in anal intercourse with her. While the sexual assaults were taking place, petitioner had the "gun" in his hand.

> FN2. The "gun" was in fact a tear gas gun.

Following the assaults, petitioner asked Ortiz to go to the bathroom and fill the tub with water. When Ortiz pointed out she could not do so because she was still handcuffed, petitioner and Ortiz went to the bathroom together, and he began to fill the tub with water. Upon returning to the living room, petitioner and Ortiz sat down and began to talk. Petitioner told Ortiz that "[she] was a nice person and [she] was a beautiful person and he really didn't know why he did that. He didn't know why [Ortiz] was treating him the way [she] was treating him." (D.I. 13, Appellant's Appendix dated March 9, 1989 at A15) Petitioner and Ortiz then went back to the bathroom where petitioner demanded that Ortiz, who was still handcuffed, get into the tub; Ortiz avoided doing so by telling petitioenr that she had doctor's orders not to take a bath. Petitioner and Ortiz returned to the living room, where petitioner apologized for what he had done. Around 4:00 am petitioner removed the handcuffs from Ortiz. Then petitioner fell asleep on the couch with the "gun" next to him. While petitioner slept, Ortiz remained still. She testified that she thought about attempting to escape but was afraid that petitioner would awaken if she moved.

At 6:00 am, Ortiz woke petitioner to tell him that she had to go to work. Ortiz also told petitioner that her boss would be picking her up, although that was not really the case. Petitioner allowed Ortiz to take a shower and get dressed. Then petitioner allowed Ortiz to call her boss to tell him she was ready for work. At that point, petitioner got dressed and at approximately 6:45 am left the apartment.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*3** At the close of trial, petitioner was convicted of all five counts. On November 23, 1987, petitioner was sentenced to life imprisonment for each of the three convictions of unlawful sexual intercourse (with a minimum mandatory term of 20 years for each). Petitioner also was sentenced to life imprisonment for kidnapping in the first degree. He was sentenced to thirty years imprisonment on the conviction for burglary in the first degree. All sentences were to be served consecutively.

Petitioner filed his direct appeal to the Delaware Supreme Court on December 14, 1987. In his complaint petitioner challenged the sufficiency of the evidence with respect to the restraint element of the kidnapping charge. (D.I. 13, Appellant's Opening Brief dated March 9, 1989) Specifically, petitioner argued that under Delaware law the facts of the case did not support a finding of restraint to support the charge of kidnapping independent of the acts of unlawful sexual intercourse. (D.I. 13, Appellant's Opening Brief dated March 9, 1989 at 12-16) On July 19, 1989, the Delaware Supreme Court affirmed petitioner's convictions, finding that "there was sufficient independent evidence to enable the jury to perform its duty when deliberating its verdicts and to support [petitioner's] convictions for each of the three charges of Unlawful Sexual Intercourse and the separate charge of kidnapping." *Murray v. State,* 565 A.2d 280, 1989 WL 88691, at \*2 (Del. July 19, 1989) (unpublished opinion).

On April 6, 1992, petitioner filed a *pro se* motion for post conviction relief and a corresponding memorandum of law, pursuant to Superior Court Criminal Rule 61. In his motion, petitioner asserted that he was denied effective assistance of counsel. (D.I. 13, Motion to Affirm dated February 16, 1993 at B7-38; Appellant's Opening Brief dated February 2, 1993) Petitioner alleged five substantive grounds of ineffectiveness of counsel: (1) failure of counsel to challenge the multiplicity of his indictment via a Bill of Particulars; (2) failure of counsel to move to suppress the admission into evidence of the tear gas gun; (3) failure of counsel to object to, or request curative instructions pertaining to, prejudicial comments made by the prosecution during closing arguments; (4) failure of counsel to move for a mistrial based on erroneous jury instructions regarding the charge of first degree burglary; and (5) failure of counsel to argue "meritorious issue[s]" that would have supported petitioner's direct appeal. (D.I. 13, Appellant's Opening Brief dated February 2, 1993) On September 4, 1992, the Superior Court denied petitioner's application for post conviction relief. *See State v. Murray,* No. IN87-01-0586 R1, 1992 WL 240490 (Del.Super.Ct. Sept. 4, 1992). The Delaware Supreme Court affirmed the Superior Court's denial of post conviction relief on February 26, 1993. *See Murray v. State,* 622 A.2d 1096, 1993 WL 66589 (Del. Feb.26, 1992) (unpublished opinion).

**\*4** Petitioner filed his pending application for federal habeas relief on September 13, 1996. In his § 2254 application, petitioner presents two main claims for relief: (1) the evidence adduced at trial was insufficient, as a matter of law, to support a charge of kidnapping independent of the three charges of unlawful sexual intercourse and (2) ineffective assistance of counsel. (D.I.3) With respect to his ineffective assistance of counsel claim, petitioner alleges the same five substantive grounds of ineffectiveness that he raised in his Rule 61 motion for post conviction relief. (D.I.3)

### III. STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996). The AEDPA amended the standards for reviewing state court judgments in § 2254 proceedings. Since petitioner filed his habeas petition on September 13, 1996, following the enactment of the AEDPA, the court will apply the amended standards set forth in the AEDPA to petitioner's claims for federal habeas corpus relief. *See Lindh v. Murphy,* 521 U.S. 320, ----, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

The federal habeas corpus statute, 28 U.S.C. § 2254 (1997), provides that a district court will consider a petition for a writ of habeas corpus presented by an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
1998 WL 299360 (D.Del.)
**(Cite as: 1998 WL 299360 (D.Del.))**

individual "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court need not consider a petition unless the petitioner has fulfilled certain procedural requirements, such as having "exhausted the remedies available in the courts of the State." *Id.* § 2254(b)(1)(A). State remedies are not deemed exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c).

The AEDPA increases the deference to be paid by a federal court to the factual findings and legal determinations made by the state courts. *See Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996) (finding amended § 2254 to be a "more deferential test" with respect to state courts' legal and factual findings). Like the prior § 2254(d), amended § 2254(e) provides that factual determinations made by a state court are presumed correct. *See* 28 U.S.C. § 2254(e)(1). However, the amended § 2254(e) goes further, placing on the petitioner the burden of rebutting the presumption by clear and convincing evidence. *See id.* Additionally, a district court shall not grant a habeas petition for any claim heard on the merits at the state level unless such previous adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
**\*5** *Id.* § 2254(d).

## IV. DISCUSSION

As a threshold issue, respondents argue that the factual allegations presented by petitioner in his unsworn memorandum submitted in support of his habeas application should not be considered by the court, and thus the application should be dismissed. (D.I. 11 at 4-5) Where, as here, the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451, 456 (3d Cir.1996). Consequently, *pro se* pleadings are held to less stringent standards than are pleadings prepared by attorneys. *See Haines,* 404 U.S. at 520-21. In the instant action, petitioner referenced his unsworn memorandum of law in his sworn petition for habeas relief. (D.I. 2 at 5-6) Accordingly, the court considers the factual allegations presented by petitioner in his memorandum as if they were raised in his sworn petition.

### A. Exhaustion Requirement

Before the court can review petitioner's claims, the court must ascertain whether petitioner has exhausted all available state remedies. *See* 28 U.S.C. § 2254(b)(1)(4). Comity is the rationale underlying the exhaustion requirement, which allows a state court the first opportunity to pass on alleged defects in the criminal proceedings leading to the conviction at issue. Recognizing that principles of federal-state comity must restrain unnecessary "[f]ederal intrusions into state criminal trials," *Engle v. Isaac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court has held that the exhaustion requirement must be "rigorously enforced," *Rose v.. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). *See also Santana v. Fenton,* 685 F.2d 71, 77 (3d Cir.1982). If a § 2254 petition includes any unexhausted claims, it "must be dismissed without prejudice for failure to exhaust all state created remedies." *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996).

To exhaust state remedies, a petitioner must have raised before the highest state court the factual and legal premises of the claims for relief he asserts in the federal proceeding. *See Chaussard v. Fulcomer,* 816 F.2d 925 (3d Cir.1987); *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986).
> "It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based." The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 5

been submitted to the state court. *O'Halloran v. Ryan,* 835 F.2d 506, 508 (3d Cir.1987) (citations omitted). "A petitioner who has raised an issue on direct appeal, however, is not required to raise it again in a state post-conviction proceeding." *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citing *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230 (3d Cir.1992)).

**\*6** As long as the petitioner's claims have been "fairly presented," they are considered exhausted. *Id.* (citing *Evans,* 959 F.2d at 1231). The "petitioner's state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts asserted in his federal habeas petition." *Doctor,* 96 F.3d at 678. "The state courts need not discuss or base their decisions upon the presented claims for those claims to be considered exhausted." *Id.* (citing *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). Finally, "[t]he exhaustion requirement is excused where no available state corrective process exists or the particular circumstances of the case render the state process ineffective to protect the petitioner's rights." *Lambert,* 134 F.3d at 513 (citing 28 U.S.C. §§ 2254(b)(1)(B)(i) and (ii)).

In the petition presently before the court, plaintiff has presented two main claims: (1) insufficiency of evidence and (2) ineffective assistance of counsel. Petitioner raised his claims of ineffective assistance of counsel in his Rule 61 motion. His state remedies concerning these claims, therefore, are exhausted. With respect to his insufficiency of evidence claim, petitioner raised this claim on direct appeal, however in doing so he neither cited federal authority nor framed the issue as a constitutional claim. Petitioner's challenge to the Superior Court's denial of a motion for directed verdict on the charge of first degree kidnapping was based solely on state law; no reference was made to federal violations. *See Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (stating that if a habeas petitioner intends to allege that his incarceration "denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court"); *Sanabria v. Morton,* 934 F.Supp. 138 (D.N.J.1996); *Cooper v. Snyder,* 888 F.Supp. 613 (D.Del.1995). Thus, although these claims might be substantially equivalent, mere similarity is not sufficient under *Duncan. See Duncan,* 513 U.S. at 364-66. Nevertheless, respondents have waived the exhaustion requirement with respect to this claim. [FN3] Petitioner's state remedies concerning this claim, therefore, are exhausted.

> FN3. Although respondents do not use the language of waiver in their answer, they argue that "[i]nterpreting [petitioner's] claim broadly, it appears that [petitioner] presented this claim to the state supreme court, thus exhausting state remedies." (D.I. 11 at 7) This argument constitutes an effective waiver under 28 U.S.C. § 2254(b)(3).

**B. Sufficiency of Evidence of Restraint**

Petitioner contends that the prosecution's evidence of restraint was insufficient to support his conviction for kidnapping independent of his convictions for unlawful sexual intercourse. Thus, petitioner contends he was denied due process of law under the Fourteenth Amendment. Where a petitioner challenges his incarceration on the ground that the evidence was insufficient to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Accord Orban v. Vaughn,* 123 F.3d 727, 731-33 (3d Cir.1997); *Moore v. Deputy Commissioner(s) of Sci-Huntingdon,* 946 F.2d 236, 243 (3d Cir.1991). Under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-- even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326. *Accord Moore,* 946 F.2d at 243.

**\*7** At the time of the offense, under Delaware law,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 6

[FN4] a person was guilty of kidnapping in the first degree when he

> FN4. The legality of petitioner' conviction is governed by Delaware law at the time of his conviction. *See Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973)

unlawfully restrain[ed] another person with any of the following purposes:
(1) To hold him for ransom or reward; or
(2) To use him as a shield or hostage; or
(3) To facilitate the commission of any felony or flight thereafter; or
(4) To inflict physical injury upon him, or to violate or abuse him sexually; or
(5) To terrorize him or a third person;
and the actor does not voluntarily release the victim alive, unharmed and in a safe place prior to trial.
11 Del.C. § 783A (1987). In the context of the kidnapping statute, the word "restrain" is defined as follows:
"Restrain" means to restrict another person's movements intentionally in such a manner as to interfere substantially with his liberty by moving him from 1 place to another, or by confining him either in the place where the restriction commences or in a place to which he has moved, without consent. A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation or deception, or by any means, including acquiescence of the victim, if he is a child less than 16 years old....

*Id.* § 786(a). The Delaware Supreme Court has interpreted restraint as it is used in the kidnapping statute as having three elements: (1) substantial interference with another's liberty: (2) by movement or confinement; (3) without consent. *See Burton v. State,* 426 A.2d 829, 832 (Del.1981). The Commentary to § 783 in the Delaware Criminal Code of 1973 provides:
It should be noted, however, that a person is not guilty of kidnapping under subsection (4) every time he commits the crime of rape or assault. Both of those crimes inevitably involve some restraint of the person but much more is required here before the additional and aggravated offense of kidnapping is committed. The State must prove that the restraint interfered substantially with the victim's liberty. Such a requirement means that there must be more interference than is ordinarily incident to the underlying offense.

Commentary, Del.Crim.Code (1973), 11 Del.C. § 783, p. 228 (footnote omitted). In *Burton,* the Delaware Supreme Court stated that "the requirement the defendant 'interfere substantially' with the victim's liberty insures that where the movement or restraint is entirely incidental to the underlying crime, there cannot be a kidnapping conviction under 11 Del.C. § 783A(4)." *Burton,* 426 A.2d at 834. *Accord Scott v. State,* 521 A.2d 235, 242 (Del.1987). [FN5]

> FN5. Subsequent to petitioner's trial but prior to his direct appeal, the Delaware Supreme Court in *Weber v. State,* 547 A.2d 948 (Del.1988) (en banc), readdressed the question whether a kidnapping charge can be separated from the underlying offense. *See id.* at 957-59. The Delaware Supreme Court stated that
> to sustain a conviction for kidnapping in conjunction with an underlying offense, the State must prove the underlying offense and substantial interference which is independent of and not incidental to that underlying offense. If the State's evidence does not prove the kidnapping charge by demonstrating substantial interference that is independent of the underlying offense, there can be no conviction for kidnapping.
> *Id.* at 958. The Delaware Supreme Court went on to state that
> [w]hen a defendant is charged with kidnapping in conjunction with an underlying crime such as rape, robbery, or assault, the dispositive issue is not the degree or duration of the movement and/or restraint, but whether the movement and/or restrain are incident to the underlying offense or are independent of the underlying offense.
> *Id.*
> The Delaware Supreme Court declined to apply the standard set forth in *Weber* to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 7

petitioner's case since it had been tried preceding *Weber. See* Murray, 1989 WL 88691, at * 2. Instead the Court reviewed petitioner's case according to the standards set forth in *Burton* and *Scott. See id.*

Review of the record reveals that there is sufficient evidence to support petitioner's conviction for kidnapping according to the law as interpreted at the time of the conviction. The testimony at trial and the supporting physical evidence established that petitioner grabbed Ortiz about the neck, pointed a gun at her, punched her in the face, handcuffed her, and took her from the living room to the bathroom and back twice. The victim was forced to remain handcuffed for 1.5 hours and then sat motionless and afraid to move for fear of being further assaulted while petitioner rested for two hours. Considering all the facts, the court concludes that a reasonable trier of fact could have found that there was substantial interference with the victim's liberty which was more than that "ordinarily incident to the underlying offense." Accordingly, the Delaware state court's rejection of this claim was not an unreasonable application of clearly established federal law and was not based on an unreasonable application of the facts. Therefore, petitioner's claim fails on the merits. [FN6]

> FN6. To the extent that petitioner challenges the Delaware Supreme Court's interpretation of Delaware's kidnapping statute, that claim presents only a question of state substantive law and as such cannot provide a basis for federal habeas relief. As the Supreme Court has stated on numerous occasions, federal habeas relief does not lie for errors of state law that do not implicate either federal law or the federal Constitution. *See, e.g.,* Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); Helton v. Fauver, 930 F.2d 1040, 1044 (3d Cir.1991). "[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." Wainwright v. Goode, III, 464 U.S. 78, 83, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).

**C. Ineffective Assistance of Counsel**

**\*8** Petitioner asserts that he was denied effective assistance of counsel. The Sixth Amendment provides that an accused has the right to the assistance of counsel in all criminal proceedings. U.S. Const. Amend. VI. This right has been interpreted as including the right to effective assistance of counsel. *See* Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The right to effective assistance of counsel exists to protect an accused's fundamental right to a fair trial. *See* id. at 684; Nix v. Whiteside, 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); United States v. Cronic, 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

To prevail on a claim of ineffective assistance of counsel, petitioner must show both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See* Strickland, 466 U.S. at 686; Burger v. Kemp, 483 U.S. 776, 788-89, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); Darden v. Wainwright, 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In determining whether counsel's actions were reasonable, the court must give considerable deference to the attorney:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 8
1998 WL 299360 (D.Del.)
**(Cite as: 1998 WL 299360 (D.Del.))**

*Strickland,* 466 U.S. at 688-89 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

Petitioner is required to illustrate not only the derelictions of his counsel, but also that "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Sistrunk v. Vaughn,* 96 F.3d 666, 670 (3d Cir.1996) (citing *Strickland,* 466 U.S. at 668). However, when evaluating counsel's performance, a court should not "focus[ ] solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The effect of counsel's deficient performance must be evaluated in light of the totality of the evidence: "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696.

In the instant action, petitioner alleges five substantive grounds of ineffectiveness of counsel: (1) failure of counsel to challenge the multiplicity of his indictment via a bill of particulars; (2) failure of counsel to move to suppress the admission into evidence of the tear gas gun; (3) failure of counsel to object to, or request curative instructions pertaining to, prejudicial comments made by the prosecution during closing arguments; (4) failure of counsel to move for a mistrial based on erroneous jury instructions regarding the charge of first degree burglary; and (5) failure of counsel to argue "meritorious issue[s]" that would have supported petitioner's direct appeal. The court will address these arguments *seriatim.*

**1. Bill of particulars**

***9** Petitioner contents that the evidence adduced at trial was insufficient, as a matter of law, to support his conviction of three separate and distinct sexual offenses and that counsel would have been aware of this insufficiency had he filed a bill of particulars pursuant to Superior Court Criminal Rule 7(f) [FN7] challenging the multiplicity of petitioner's indictment.

A bill of particulars is a discovery device "designed to fill any gap between the facts disclosed by the indictment and that 'set of facts' which will permit [the defendant] the opportunity of preparation." *United States v. Manetti,* 323 F.Supp. 683, 696 (D.Del.1971); *see also United States v. Parlavecchio,* 903 F.Supp. 788, 795 (D.N.J.1995) ("[Bills of particulars] are designed[ ] 'to identify with sufficient particularity the nature of the charge pending against the defendant, thereby enabling him to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.' ") (quoting *United States v. Eisenberg,* 773 F.Supp. 662, 689 (D.N.J.1991)); *Robinson v. State,* 600 A.2d 356, 361 (Del.1991) ("The purpose of a bill of particulars is to further apprise a defendant of what he may expect to meet at trial."); *Lovett v. State,* 516 A.2d 455, 467 (Del.1986) ("Essentially, a bill of particulars is intended to provide notice supplemental to information contained in the indictment."). In the instant action, the indictment plainly stated that three distinct charges of unlawful sexual intercourse were being brought against petitioner. The indictment concisely stated the "essential facts" of the offenses charged in language that followed the wording of the applicable statute, i.e., that defendant, who was not the victim's social companion, (1) on or about January 15, 1987; (2) did intentionally cause; (3) the victim, Nereida Ortiz; (4) to engage in sexual intercourse; (5) by inserting his penis into her mouth, vagina, and anus; (6) without her consent; (7) while displaying what appeared to be a deadly weapon. *See* Superior Court Criminal Rule 7(c) ("The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."); *United States v. Shirk,* 981 F.2d 1382, 1389 (3d Cir.1992) (" '[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of an subsequent prosecution.' ") (quoting *United States v. Olatunji,* 872 F.2d 1161, 1166 (3d Cir.1989)), *vacated on other grounds,* 114 S.Ct. 873 (1994); *see also United States v. Debrow,* 346 U.S. 374, 377-78, 74 S.Ct. 113, 98 L.Ed. 92 (1953). Thus, the indictment was sufficient to inform the defendant of the charges

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 9

against him, to permit him reasonable opportunity to prepare a defense, and to provide a shield against subsequent prosecution for the same offenses. Consequently, a bill of particulars was unnecessary, and counsel was not deficient for not requesting such. Even assuming arguendo that the Superior Court would have granted a bill of particulars, there is no evidence that counsel's failure to make such a motion prejudiced petitioner. Petitioner has not alleged nor demonstrated that counsel was unaware of material evidence which might have aided petitioner's defense. Accordingly, the court concludes that petitioner did not receive ineffective assistance of counsel in this regard.

>   FN7. Rule 7(f) provides that the Superior Court may direct the filing of a bill of particulars upon motion by a defendant before arraignment, within 10 days after arraignment, or "at such later time as the court may permit."

### 2. The tear gas gun

**\*10** Regarding the tear gas gun, petitioner argues that counsel should have moved to suppress its admission. Petitioner also contends that "counsel did not discuss the applicable principles of law with regard to the merits of submitting a motion to suppress the tear gas gun." (D.I. 3 at 34) Specifically, petitioner argues that the gun was inadmissable since (1) the State had dropped the charge of possession of a deadly weapon during the commission of a felony and (2) the evidence was seized in violation of the search warrant. [FN8] Petitioner also argues that the Superior Court committed plain and reversible error when it failed to give a "cautionary instruction" (i.e., that a tear gas gun is not a deadly weapon) regarding the tear gas gun.

>   FN8. Petitioner does not contend that he was prohibited from litigating a Fourth Amendment claim in the state courts and thus is able to pursue federal habeas corpus relief on the ground that the tear gas gun was obtained as a result of an unconstitutional search and seizure. See Stone v. Powell, 428 U.S. 465, 494-95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

Section 775 of Title 11 of the Delaware Code provides in relevant part that a person is guilty of first degree unlawful sexual intercourse if "he intentionally engaged in sexual intercourse with another person and ... in the course ... displayed what appeared to be a deadly weapon or a dangerous instrument...." (Emphasis added) Since the charges were aggravated, in part, because petitioner displayed what the victim believed to be a deadly weapon during the sexual assaults, the tear gas gun was relevant, admissible evidence. Under the statute, the State was not required to establish that the weapon petitioner possessed was actually a deadly weapon but only that Ortiz reasonably perceived it to be one. Consequently, counsel's failure to object to the admission of the tear gas gun does not constitute ineffective assistance of counsel. Furthermore; the court's failure to instruct the jury that a tear gas gun is not a deadly weapon was not error since the operative fact under the statute is whether the tear gas gun "appeared to be a deadly weapon or a dangerous instrument," not whether it is in fact a deadly weapon.

### 3. Prosecutorial misconduct

Petitioner contends that the remark made by the State during closing argument that he "learned about sex in jail" was "made solely to inflame the passions and/or prejudices of the jury." (D.I. 3 at 39) Petitioner argues that he was deprived of effective assistance by counsel's failure to object to this remark and to request curative instructions. The Third Circuit has stated that a court must evaluate potentially improper stray prosecutorial comments "in light of [the] closing argument as a whole." Government of Virgin Islands v. Joseph, 770 F.2d 343, 350 (3d Cir.1985). A court

>   cannot rest with a determination that the remarks were undesirable or inappropriate.... Instead, "the relevant question is whether the prosecutors' comments so 'infected the trial with unfairness as to make the conviction a denial of due process.' "

Lesko v. Lehman, 925 F.2d 1527, 1546 (3d Cir.1991) (quoting Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 10

1868, 40 L.Ed.2d 431 (1974))). *Accord United States v. LeFevre,* 483 F.2d 477, 479 (3d Cir.1973) ( "[T]he court is under an obligation ... to consider the entire record to determine whether the errors were sufficiently prejudicial to have tipped the scales and thereby denied defendant a fair trial."). Under this standard, the court concludes that the prosecutor's remark, although prejudicial in nature and not plainly supported by the evidence of record, [FN9] was not such that it deprived petitioner of his right to a fair trial. Moreover, any potential negative impact the statement might have had was counterbalanced by counsel's attempt to put the prosecution's comment in proper context. Considered in light of all the facts and evidence adduced at the trial, this comment was brief, isolated, and not sufficiently prejudicial to undermine the court's confidence in the outcome. Accordingly, the court concludes that counsel's failure to object to the remark and request curative instructions does not constitute ineffective assistance.

> FN9. During the prosecution's direct examination of petitioner the following exchange took place:
> Q Mr. Murray, you have heard the testimony of Ms. Ortiz that you raped her on more than one occasion on January 15. Do you know what the term "rape" means?
> A Yes.
> Q What does it mean to you? A Having sex with someone without their consent. I[ ] learned that when I was doing time back in '78-' 79.
> (D.I. 3 at A99)

### 4. Erroneous jury instructions

*11 Petitioner contends he was denied effective assistance because counsel failed to move for a mistrial on the charge of first degree burglary based on the trial court's "erroneous" instructions to the jury. Petitioner's argument centers on a discrepancy between the indictment's charge of first degree burglary and the court's instruction to the jury regarding § 826 of Title 11 of the Delaware Code. Count I of petitioner's indictment charged him with first degree burglary in language tracking the relevant statute, 11 Del. C. § 826: [FN10]

> FN10. Section 826 defines first degree burglary as
> when [a person] knowingly enters **or remains unlawfully** in a dwelling at night with intent to commit a crime therein, and when, in effecting entry or when in the dwelling he or another participant in the crime causes physical injury to any person who is not a participant in the crime.
> 11 Del. C. § 826 (emphasis added).

BURGLARY FIRST DEGREE in Violation of Title 11, Section 826 of the Delaware Code of 1974, as amended.
[Petitioner], on or about the 15th day of January, 1987, ... did, at night, knowingly and unlawfully enter a dwelling ... with the intent to commit the crime of Unlawful Sexual Intercourse therein, and when in said dwelling he did cause physical injury to Nereida Ortiz, a victim, by punching her in the face and choking her around the neck.

(D.I. 3 at A12) The indictment, however, omitted an element of the offense, specifically the phrase "or remains unlawfully in." With respect to this charge, the court instructed the jury regarding the applicable law, reciting § 826, including the phrase that had been omitted from the indictment. In reviewing the elements of the crime, the court stated as the first element:

> One, the defendant entered or remained unlawfully in a dwelling.... A person enters or remains unlawfully in a place when he has no license or privilege to be there. That is he does not have the permission or consent of the owner of the place to be there.

(D.I. 4 at A103-04) The record indicates that during deliberations the jury questioned the court regarding whether the defendant had to have the intent to commit the crime of unlawful sexual intercourse prior to entering the dwelling. Following discussions with counsel, the court determined that it would instruct the jury as follows:

> [H]e must have the intent at the time the entry occurs, or if they find that the entry was not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 11

unlawful, that it was at the time he was asked to leave and remained on the premises, if they find that that was a fact.
 (D.I. 4 at A106) [FN11]

> FN11. After this determination, the following discussion ensued:
> [COUNSEL]: I am having a problem with this concept of at the time he was asked to leave, the intent was formed. If he is in her premises lawfully, and is asked to leave--
> [STATE]: And doesn't.
> [COUNSEL]:--and doesn't--
> [STATE]: Then he becomes unlawfully on the premises.
> THE COURT: If he remains there with the intent to commit the--
> [COUNSEL]: But the Indictment doesn't charge remain there, does it? Doesn't it say he entered the premises?
> [STATE]: The indictment only gives notice, but what you have to prove is the law. We had a little discussion on indictment this morning, but the purpose of indictment is to give adequate notice of the crime charged, so--
> THE COURT: I left the Indictment in the courtroom. My recollection of the Indictment is that it does charge enter or remain unlawfully.
> [STATE]: That is a pattern in our office. That would be the normal language.
> THE COURT: That is what I am going to charge, and if anybody takes exception to it, your exception will be noted.
> [COUNSEL]: I will note my exception now.
> THE COURT: Fine. Let's go down and answer the question.
> (D.I. 4 at A106-07)

 The record indicates that counsel did pose an objection to the proposed jury instruction as being inconsistent with the indictment. As to the merits of counsel's objection (and petitioner's present claim), the appropriate standard to assess the sufficiency of an indictment is whether it served to inform the defendant of the nature of the charges such that he is able to adequately prepare a defense. The instant indictment clearly informed petitioner of the charge against him. When read in conjunction with the statute cited therein, the indictment put petitioner on notice of the essential elements of the offense with which he was charged. Therefore, the notice requirements under both Delaware law and the Constitution were adhered to. Moreover, the court's instructions were not in error as they provided to the jury a statement of the law applicable to a first degree burglary charge. Consequently, counsel's performance did not fall below an objectively reasonable standard. Since petitioner was given adequate notice, he has not demonstrated prejudice within the meaning of *Strickland.* Accordingly, the court concludes that petitioner did not receive ineffective assistance of counsel in this regard.

**5. "Meritous issues" on direct appeal**

 **\*12** Petitioner contends that he was denied effective assistance "due to counsel's failure to argue meritorious issues that would have arguably supported the defendant's direct appeal." (D.I. 3 at 45) Specifically, petitioner maintains "that the issues presented in his Rule 61 post-conviction motion, appeal to the Delaware Supreme Court, and advanced [in his federal habeas petition], were significant and obvious issues that should have been presented to the Supreme Court on direct appeal." (D.I. 3 at 46)

 The court assumes from his statement that petitioner is arguing that appellate counsel was ineffective. The standard for finding appellate counsel ineffective is more stringent than that for trial counsel. In *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), the Supreme Court set forth the following standard:

> "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Nor can it seriously be maintained that the decision not to press the claim on appeal was an error of such magnitude that it rendered counsel's performance constitutionally deficient under the test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1998 WL 299360 (D.Del.)  
**(Cite as: 1998 WL 299360 (D.Del.))**

Page 12

(1984).... [However,] "the right to effective assistance of counsel ... may in a particular case be violated by even an isolated error ... if that error is sufficiently egregious and prejudicial."

*Id.* at 535 (quoting *Murray v. Carrier,* 477 U.S. 478, 486-87, 496 (1986)) (citation omitted). The Third Circuit has stated that appellate counsel does not have a "duty to raise every possible claim." *Sistrunk,* 96 F.3d at 670; *see also Smith,* 477 U.S. at 536 (stating that the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy") (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Thus, petitioner can prevail on a claim of ineffective assistance of counsel for appellate counsel's failure to raise a particular claim only if failing to do so was "sufficiently egregious and prejudicial." Because claims of ineffective assistance of counsel could not have been raised on direct appeal, counsel's failure to raise such claims does not constitute ineffective assistance of counsel. Moreover, in light of the evidence presented at trial regarding petitioner's repositioning of the victim between sexual assaults and the varying nature of the assaults, counsel's failure to raise the issue of "multiplicity" was neither egregious nor prejudicial and thus does not rise to the level of ineffective assistance of counsel.

In sum, none of these grounds provides a basis for finding ineffective assistance of counsel. Hence, the Delaware state courts' rejection of petitioner's claim was not an unreasonable application of clearly established federal law and was not based on an unreasonable application of the facts. Therefore, petitioner's claim of ineffective assistance of counsel fails on the merits.

## V. CONCLUSION

**\*13** For the foregoing reasons, the court concludes that petitioner's request for habeas relief filed pursuant to 28 U.S.C. § 2254 lacks merit. Therefore, petitioner's application for federal habeas relief shall be dismissed and the writ denied. Furthermore, the court finds no basis for the issuance of a certificate of appealability.

*See* 28 U.S.C. § 2253(c)(2). An appropriate order shall issue.

1998 WL 299360 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.