IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WAVERLY N. WHITE,              )
                              )
            Petitioner,        )
                              )
      v.                       )    Civ. No. 05-014-SLR
                              )
THOMAS CARROLL,                )
Warden,                        )
                              )
            Respondent.        )

Waverly White.  Pro se petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

Dated: February 24, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.  INTRODUCTION

Petitioner Waverly White ("petitioner") is an inmate in

custody at the Delaware Correctional Institution in Smyrna,

Delaware.  Before the court is petitioner's application for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (D.I. 1)

The State has filed its answer that habeas relief is not

warranted.  For the reasons that follow, petitioner's application

will be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The facts of petitioner's case, as adduced at trial and

reported by the Delaware Supreme Court on direct appeal, are as

follows:

> [Petitioner] and his co-defendant allegedly encountered
> three men outside a tavern.  One of the three men, Steve
> Swift, was wearing silver necklaces.  Petitioner allegedly
> pushed Swift to the ground, grabbed Swift's chains, and
> walked off.
>
> Swift's companion, Frank Petroccitto, allegedly chased after
> White and demanded the return of the necklaces.  Petroccitto
> testified to grabbing [petitioner] in an attempt to
> neutralize him. [Petitioner] then punched Petroccitto and
> threw Petroccitto to the ground.  Petroccitto again chased
> after [petitioner] and caught him from behind. [Petitioner]
> allegedly brandished a semi-automatic weapon, struggled with
> Petroccitto, and ran into the woods.
>
> The police arrived at the scene within minutes and soon
> apprehended [petitioner] and [his co-defendant].  The police
> drove Petroccitto to the area and he identified [the two] as
> the attackers.  The police searched [petitioner] and found a
> crack pipe.  The necklaces and gun were never located.

White v. State, 816 A.2d 776, 778 (Del. 2003).

In April 2002, a Delaware Superior Court jury convicted petitioner of first degree robbery, third degree assault, and possession of drug paraphernalia. The jury acquitted him of possession of a firearm by a person prohibited, possession of a firearm during the commission of a felony, aggravated menacing, and reckless endangering in the first degree. The Superior Court sentenced petitioner to twenty-four (24) years of incarceration at Level V, to be followed by probation.

Petitioner appealed, alleging that: (1) the prosecutor's untimely disclosure of Petroccitto's criminal history constituted a Brady violation; (2) the prosecutor improperly vouched for Swift by explaining his absence from the trial; and (3) the Superior Court improperly denied his motion for acquittal on the charge of first degree robbery. The Delaware Supreme Court affirmed petitioner's conviction and sentence. White v. State, 816 A.2d 776 (Del. 2003).

On December 24, 2003, petitioner filed a pro se motion for post-conviction relief in the Delaware Superior Court pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). He alleged that trial counsel was ineffective for failing to cross-examine Petroccitto about his criminal record, and for failing to request a continuance to subpoena any other criminal records of Petroccitto. The Delaware Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision.

3

State v. White, 2004 WL 98720,at *2 (Del. Super. Ct. Jan. 8, 2004); White v. State, 854 A.2d 1159 (Table), 2004 WL 1790195 (Del. Aug. 2, 2004).

Petitioner presented a second Rule 61 motion to the Superior Court, which the court also denied. See White v. State, 2004 WL 2827709, at *3-*4 (Del. Super. Ct. Nov. 15, 2004). Petitioner did not appeal that decision.

## III.  GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief for his claims under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); See Lambert v. Blackwell,

4

134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). In such cases, the claim is deemed exhausted but procedurally defaulted. Harris v. Reed, 489 U.S. 255, 263 (1989); Werts, 228 F.3d at 192. Additionally, if a petitioner exhausts state remedies by presenting a habeas claim to the state's highest court, but the court refuses to consider the claim for failing to comply with an independent and adequate state procedural rule, the claim is considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Harris, 489 U.S. at 263-64.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense

5

impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, Bousley v. United States, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Sweger v. Chesney, 294 F.3d 506, 522-24 (3d Cir. 2002).

## B. Standard of review under AEDPA

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).

6

A state court has adjudicated a claim on the merits for the
purposes of § 2254(d) if the state court "decision finally
resolv[es] the parties' claims, with res judicata effect, [and]
is based on the substance of the claim advanced, rather than on a
procedural, or other ground." Rompilla v. Horn, 355 F.3d 233,
247 (3d Cir. 2004)(internal citations omitted), rev'd on other
grounds by Rompilla v. Beard, 125 S.Ct. 2456 (2005).
Pursuant to § 2254(d), federal habeas relief may only be granted
when the state court's decision was "contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," or the
state court's decision was an unreasonable determination of the
facts based on the evidence adduced in the trial. 28 U.S.C. §
2254(d)(1) & (2); Williams v. Taylor, 529 U.S. 362, 412 (2000);
Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

    AEDPA also requires a federal court to presume that a state
court's determinations of factual issues are correct. 28 U.S.C.
§ 2254(e)(1). A petitioner can only rebut this presumption of
correctness by clear and convincing evidence. 28 U.S.C. §
2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341
(2003)(stating that the clear and convincing standard in §
2254(e)(1) applies to factual issues, whereas the unreasonable
application standard of § 2254(d)(2) applies to factual
decisions). This presumption of correctness applies to both

7

explicit and implicit findings of fact.  <u>Campbell v. Vaughn</u>, 209
F.3d 280, 286 (3d Cir. 2000).

## IV.  **DISCUSSION**

Petitioner's § 2254 application[1] asserts ten (10) claims for
habeas relief:[2]  (1) the prosecution failed to timely disclose
potentially exculpatory evidence by producing Petroccitto's
criminal record only one week prior to trial;  (2) the
prosecutor's closing argument improperly explained Swift's
absence from the trial proceedings;  (3) the trial court should
have granted petitioner's motion for judgment of acquittal
because Petroccitto was not justified in attacking petitioner to
retrieve stolen property;  (4) petitioner's Sixth Amendment right
to confront his accuser was violated;  (5) there was insufficient

---

[1]Petitioner's habeas application, dated January 4, 2005,
appears to be time-barred.  The State did not raise the
limitations issue in its answer.  Although the Third Circuit has
recently held that a district court may sua sponte raise the
limitations issue in a § 2254 proceeding, a district court is not
required to do so.  <u>Long v. Wilson</u>, 393 F.3d 390 (3d Cir.
2004)(holding that a magistrate judge may sua sponte determine
the timeliness of a § 2254 application under AEDPA even if the
State fails to raise the issue in its answer), <u>petition</u> <u>for</u> <u>cert.</u>
<u>filed</u>, (U.S. May 6, 2005)(No. 04-10035); <u>U.S. v. Bendolph</u>, 409
F.3d 155 (3d Cir. 2005);  <u>see</u> <u>also</u> <u>Knecht v. Shannon</u>, 132 Fed.
Appx. 407, 408 (3d Cir. 2005)(noting that, by extension, the <u>Long</u>
rule presumably applies to a district court judge as well as a
magistrate judge)(non-precedential).  Therefore, the court will
proceed to review the application and the State's reasons for
dismissing it.

[2]Petitioner's application asserts seventeen (17) claims, but
the court has combined repetitive claims, thereby reducing the
total number of claims to ten (10).

8

evidence to sustain the conviction; (6) trial counsel provided
ineffective assistance by failing to: (a) subpoena witnesses; (b)
request a continuance to subpoena other criminal records of
Petroccitto and prepare for cross-examination; and (c) question
Petroccitto about his criminal history; (7) the State
vindictively prosecuted the case; (8) the indictment was
deficient due to "police officers employing outrageous law
enforcement investigative techniques"; (9) appellate counsel
provided ineffective assistance; and (10) the Superior Court
erred in denying petitioner's Rule 61 motion because it misused
state procedural rules, it dismissed his claims as conclusory,
and petitioner demonstrated both the "cause and prejudice" prongs
of Strickland.[3]  (D.I. 13)

The State's answer contends that the application should be
dismissed in its entirety.  (D.I. 13)

## A.  Claim one: Brady violation

Petitioner's first claim contends that the prosecution
failed to timely disclose potentially exculpatory evidence by
producing Petroccitto's criminal record only one week prior to
trial.  Petitioner exhausted state remedies by presenting this
claim to the Delaware Supreme Court in his direct appeal.  The

---

[3]To the extent petitioner's reference to the "cause and
prejudice" standard of Strickland can be construed as alleging an
independent claim of ineffective assistance of counsel, the
"independent" claim is included in claims six and nine.

9

Delaware Supreme Court denied the claim on the merits.
Therefore, the court can only grant habeas relief if the Delaware
Supreme Court's decision was contrary to, or an unreasonable
application of, clearly established Supreme Court precedent.

The Supreme Court precedent governing challenges to a
conviction based on a state's failure to disclose evidence is
Brady v. Maryland, 373 U.S. 83 (1963) and its progeny.  Pursuant
to Brady, the prosecution's suppression of evidence that is both
favorable and material to the accused violates due process if
there is a reasonable probability that the result of the
proceeding would have been different had the evidence been
disclosed to the defense.  Brady, 373 U.S. at 87.  There are
three components to a Brady violation: (1) the material evidence
"must be favorable to the accused, either because it is
exculpatory, or because it is impeaching;" (2) the State
willfully or inadvertently suppressed the evidence; and (3)
prejudice ensued.  Strickler v. Greene, 527 U.S. 263, 281-82
(1999).  The Brady rule also requires the government to disclose
favorable and material evidence affecting the jury's judgment of
a crucial prosecution witness' credibility .  Giglio v. United
States, 405 U.S. 150, 154 (1972).

In petitioner's case, the Delaware Supreme Court found that
the prosecution's delayed disclosure of Petroccitto's criminal
record did not constitute a Brady violation.  The court concludes

10

that this decision was neither contrary to, nor an unreasonable
application of, Supreme Court precedent, because the Brady rule
does not generally apply to the delayed disclosure of exculpatory
or impeachment evidence; rather, it only applies to a complete
failure to disclose.  U.S. v. Higgs, 713 F.2d 39, 43-4 (3d Cir.
1983).

        When, as here, there is delayed disclosure of Brady material
"that defendants could use on cross-examination to challenge the
credibility of Government witnesses," due process is not violated
if the material was disclosed in time for the defendant to
effectively use the material at trial.  Higgs, 713 F.2d at 43-4.
In fact, the Third Circuit has held that due process is satisfied
if such material is disclosed the day the witness testifies.  Id.
In petitioner's case, defense counsel received Petroccitto's
criminal history record one week prior to trial.  Defense counsel
actually questioned Petroccitto about his criminal history during
voir dire examination outside the presence of the jury,
demonstrating that his subsequent failure to question Petroccitto
during cross-examination while in front of the jury was not due
to the delayed disclosure.  Rather, it was due to defense
counsel's voluntary decision to refrain from pursuing that line
of inquiry.  Therefore, the court concludes that the Delaware
Supreme Court's determination that defense counsel had an
opportunity to use Petroccitto's criminal history record

                                    11

effectively[4] was neither contrary to, nor an unreasonable application of, federal law. Accordingly, the court will deny petitioner's Brady claim because it does warrant federal habeas relief under § 2254(d)(1).

**B. Ineffective assistance of counsel claims six (b) and (c) do not warrant federal habeas relief under § 2254(d)(1)**

In claims six (b) and (c) (6(b),(c)), petitioner contends that trial counsel provided ineffective assistance by failing to: (1) request a continuance to subpoena other criminal records of Petroccitto and prepare for cross-examination; and (2) question Petroccitto about his criminal history in front of the jury, or by failing to object to the inability to do the same. Petitioner presented these arguments to the Delaware Supreme Court when he appealed the denial of his first Rule 61 motion. The Delaware Supreme Court affirmed the Superior Court's decision after determining that the claims were meritless. Therefore, the court must review the claims under § 2254(d)(1).

The "clearly established [f]ederal law" which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S. 668

---

[4]The state court applied the Delaware rule that, when "a defendant is confronted with delayed disclosure of Brady material, reversal will be granted only if the defendant was denied the opportunity to use the material effectively." White, 816 A.2d at 778 (citing Atkinson v. State, 778 A.2d 1058, 1062 (Del. 2001)). This rule is identical to that formulated by the Third Circuit in Higgs.

(1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510
(2003). To prevail on a claim of ineffective assistance of
counsel, a petitioner must demonstrate both that: (1) counsel's
performance fell below an objective standard of reasonableness
measured under prevailing professional norms; and (2) counsel's
deficient performance actually prejudiced the petitioner's case.
Strickland, 466 U.S. at 690. In order to sustain an ineffective
assistance of counsel claim, a petitioner must make concrete
allegations of actual prejudice and substantiate them or risk
summary dismissal. See Wells v. Petsock, 941 F.2d 253, 259-260;
Dooley, 816 F.2d at 891-92. Although not insurmountable, the
Strickland standard is highly demanding and leads to a "strong
presumption that the representation was professionally
reasonable." Strickland, 466 U.S. at 689.

Here, during the relevant time period, charges of
harassment, terroristic threatening, and criminal trespass were
pending against Petroccitto. Petitioner argues that defense
counsel should have questioned Petroccitto in front of the jury
about these pending charges and that counsel should have asked
Petroccitto whether he was promised any benefit in return for
testifying in petitioner's trial. During petitioner's post-
conviction proceeding, the Delaware Superior Court determined
that the existence of the pending charges would not have been
admissible to impeach Petroccitto in front of the jury and,

13

therefore, defense counsel did not perform unreasonably in avoiding the issue. The Superior Court also determined that petitioner failed to demonstrate prejudice, because he failed to demonstrate what further information would have been elicited on cross-examination. After reviewing the record, the Delaware Supreme Court affirmed the Superior Court's decision.

On federal habeas review, a district court is required to accept a state court's interpretation of state law. See Bradshaw v. Richey, 126 S.Ct. 602, 604 (2005). Additionally, it is well-settled that an attorney does not provide ineffective assistance by failing to raise improper or meritless claims. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Therefore, given the Superior Court's determination that Delaware evidentiary law would have precluded defense counsel from using Petroccitto's arrest record to impeach him in front of the jury,[5] the Delaware

---

[5]The Superior Court explained:

When questioning resumed before the jury, defense counsel did not cross-examine the defendant concerning his arrest, which is the basis of the present complaint. An arrest is irrelevant under DRE 609(a)(2), and it would not have been admissible under DRE 609(b). The witness had denied giving a false report. His charges were then pending. The proof of the allegations concerning the false report charge could have only been explored by way of cross-examination. Knowing that the witness was denying the pending charge it is not unreasonable for defense counsel to have chosen to stay away from this area, especially in view of the other provisions of DRE 608(b) concerning the privilege of self-incrimination. In other words, I do not find it unreasonable for defense counsel to decide to avoid this issue in light of the response he obtained from the witness on cross-examination, out of the presence of the

14

Supreme Court's rejection of the instant claim was neither contrary to, nor an unreasonable application of, Strickland.

Petitioner also contends that defense counsel provided ineffective assistance by failing to request a continuance to subpoena other criminal records of Petroccitto and to prepare for cross-examination.  The Superior Court denied this claim after finding that petitioner failed to support his conclusory allegations with specific and concrete instances of prejudice.[6] The Delaware Supreme Court affirmed the decision for the same reason.  See White, 2004 WL 1790195, at *2.

In the present case, petitioner's habeas application fails to specify what additional records were available and what information counsel could have discovered had he subpoenaed further records.  Considering the fact that counsel did question Petroccitto on voir dire about his criminal record and that, due to Petroccitto's answers, counsel did not subpoena further

---

jury, and the problems he would have face under DRE 608. White, 2004 WL 98720, at *2.

[6]The Superior Court explained:

Mr. White, in this present petition, offers nothing to show that had his trial attorney been more vigorous in cross-examining Mr. Petroccitto, there would have been anything elicited that would have changed the result in the trial.  There has been no showing that Mr. Petroccitto had any criminal conviction which would have been admissible under DRE 609, nor has there been any proffer as to what further cross-examination would have elicited, which is admissible, under DRE 608(b).
White, 2004 WL 98720, at *2.

records, counsel's decision appears to have been a "strategic choice" made after thorough investigation, and therefore, "virtually unchallengeable." Strickland, 466 U.S. at 690. Thus, the court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, Strickland.

Accordingly, the court will deny the instant ineffective assistance of counsel claims for failing to satisfy the requirements of § 2254(d)(1).

## C.   The assertion of prosecutorial vouching in claim two does not warrant federal habeas relief under § 2254(d)(1)

In claim two (2), petitioner contends that the prosecutor's closing argument improperly included an explanation regarding Swift's absence from the trial. Petitioner exhausted state remedies by presenting this claim to the Delaware Supreme Court on direct appeal. However, petitioner did not contemporaneously object to the prosecutor's statement during his trial, and the State contends that the claim, therefore, is procedurally defaulted under the independent and adequate state procedural ground doctrine because the Delaware Supreme Court only reviewed the claim for plain error.

If a state court refuses to review the merits of a claim due to a petitioner's failure to comply with an independent and adequate state procedural rule, the claim will be considered to

16

be procedurally defaulted for the purposes of federal habeas
review. Coleman v. Thompson, 501 U.S. 722, 750 (1991). A
procedural default will only be found if the last state court
giving a reasoned judgment on the matter "clearly and expressly"
states that its judgment rests on the procedural bar. Id.;
Harris, 489 U.S. at 260-61.

It is well-settled in Delaware that the failure to make
contemporaneous objections or raise issues during a trial
constitutes a waiver of the issue on direct appeal, meaning that
the Delaware Supreme Court is barred from reviewing the issue
unless the appellant establishes that the trial court committed
plain error.[7] Jackson v. State, 600 A.2d 21, 23 (Del. 1996);
Mason v. State, 658 A.2d 994, 996 (Del. 2002); Del. Sup. Ct. R.
8; Cooper v. State, 679 A.2d 469 (Table), 1996 WL 313501, at **2
(Del. 1996); Bodnari v. State, 839 A.2d 669 (Table), 2003 WL
22880372, at *1 (Del. Dec. 3, 2003)(prosecutorial misconduct).
Even though petitioner failed to preserve the prosecutorial
misconduct claim for appeal, the court concludes that the claim
is not procedurally defaulted because the Delaware Supreme Court
did not "plainly state" that its judgment rested on any

---

[7]Plain error is "error so clearly prejudicial to substantial
rights so as to jeopardize the fairness and integrity of the
trial process . . . [and is a] material defect which [is]
apparent on the face of the record [and is] basic, serious, and
fundamental . . ." Wainwright v. State, 504 A.2d 1096, 1100
(Del. 1986).

17

procedural bar. See Harris, 489 U.S. at 260-61. The Delaware
Supreme Court stated that "White next asserts plain error
occurred when the prosecutor explained why Swift did not appear
at trial;" the state court never goes on to explain the plain
error standard, nor does it refer to plain error in its analysis
or conclusion. White, 816 A.2d at 779. Rather, the state court
explained the Delaware test for prosecutorial vouching, and cited
to two Delaware cases. Id. at 780. In turn, those Delaware
cases explained federal caselaw governing the issue of
prosecutorial vouching. Id. On this record, the court is
constrained to conclude that the procedural bar was not an
independent basis for the state court's decision, and that the
Delaware Supreme Court denied the instant claim on the merits.[8]
Therefore, the court will review the claim under § 2254(d)(1) to
determine if the Delaware Supreme Court's decision was either
contrary to, or involved an unreasonable application of, clearly
established Supreme Court precedent.

    During summation in petitioner's trial, defense counsel

_____

    [8]The court notes that it is not departing from its prior
holdings that the application of the plain error standard
pursuant to Delaware Supreme Court Rule 8 constitutes an
independent and adequate state ground precluding federal habeas
review, absent a showing of cause and prejudice. See Hubbard v.
Carroll, 2003 WL 277252, at *3 (D. Del. Feb. 5, 2003); Maxion v.
Snyder, 2001 WL 848601, at *10 (D. Del. July 27, 2001). In the
instant situation, the Delaware Supreme Court did not cite to
Delaware Supreme Court Rule 8, it did not explain the plain error
standard, and it did not explain why it was applying the plain
error standard.

18

argued that the State's case was weak because the jury had "not heard from the robbery victim [Swift]." In his rebuttal, the prosecutor stated:

> Mr. Swift is another part of this case. There is again no law or rule, although the innuendo is such from [defense counsel] that he would have to have Mr. Swift here for there to be a good case, when you've got Mr. Petroccitto and Kathy Dottery both as eyewitnesses, seeing that man snatch this silver necklace of Mr. Swift. You don't need Mr. Swift here. And you were even given testimony as to where Mr. Swift is; Chicago with a new job.

White, 816 A.2d at 779. Petitioner claims that this statement constituted improper prosecutorial vouching.

In order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 180 (1986)(citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). Vouching is one form of prosecutorial misconduct. See Lam v. Kelchner, 304 F.3d 256, 271 (3d Cir. 2002). Two criteria must be met in order to find vouching: (1) the prosecutor must assure the jury of a witness' credibility; and (2) the assurance must be based on the prosecutor's personal knowledge or on information not contained in the record. United States v. Lawn, 355 U.S. 339, 359 n. 15 (1958); see also U.S. v. Walker, 155 F.3d 180, 184 (3d Cir. 1998). When determining whether a prosecutor's comments are improper, the comments must be viewed in the context in which they were made. United States

19

v. Young, 470 U.S. 1, 11 (1985).

In the instant case, the Delaware Supreme Court found that the prosecutor's statement did not constitute vouching because he merely repeated Petroccitto's testimony and directed the jury to rely on the testimony given by Petroccitto and Dottery.[9] Viewing the prosecutor's statement in context with Petroccitto's prior testimony, the court agrees with the Delaware Supreme Court's interpretation of the prosecutor's statement. Additionally, because the prosecutor did not reference personal knowledge or evidence outside the record, the court finds that the prosecutor's statement did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 180. Accordingly, the court will deny the claim for failing to satisfy § 2254(d)(1).

## D. Seven claims are procedurally barred due to petitioner's failure to appeal the Superior Court's denial of his second Rule 61 motion

Petitioner presented claims three (3), four (4), five (5), six(a)(6(a)), seven (7), eight (8), and nine (9) to the Superior Court in his second Rule 61 motion. Petitioner did not exhaust state remedies for these claims because he failed to appeal the

---

[9]Although the Delaware Supreme Court applied Delaware's standard for improper prosecutorial vouching, the state standard complies with the aforementioned federal standard. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law. Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889(3d Cir. 1999).

Superior Court's denial of his second Rule 61 motion.
Additionally, state procedural rules would bar him from pursuing
further state court review of these claims.[10]  Consequently,
petitioner's claims are deemed exhausted but procedurally
defaulted, and the court can only review the merits of the claims
upon a showing of cause for the procedural default and prejudice
resulting therefrom, or that a miscarriage of justice will result
if the court refuses to hear the claims.

Petitioner does not allege that some external factor
prevented him from appealing the denial of his second Rule 61
motion.  To the extent petitioner contends that he did not appeal
some of these claims because it would have been "futile,"
futility of this type does not constitute cause excusing a
procedural default.  See Holland v. Horn, 150 F. Supp. 2d 706,
773 (E.D. Pa. 2001)(collecting cases).  Additionally, because
petitioner presented both Rule 61 motions pro se, ineffective
assistance of counsel is not cause for the default.  Finally,
petitioner's lack of legal knowledge fails to constitute cause.
See Qualls v. Williams, 2004 WL 2283595, at *4 (D. Del. Sept. 29,

_____

[10]First, the time to appeal the Superior Court's decision has
long past.  See Del. Sup. Ct. R. 6(a)(iii); Del. Code Ann. tit.
10, § 147.  Second, Rule 61(i)(4) would bar petitioner from
presenting the claims in a new Rule 61 motion.  See Kendall v.
Attorney General of Delaware, 2002 WL 531221, at *4 (D. Del. Mar.
26, 2002).  Finally, any claims related to petitioner's original
conviction and sentence would be barred under Rule 61(i)(3)
because petitioner did not raise them on direct appeal.  Kendall,
2002 WL 531221, at 84.

21

2004).

In the absence of cause, the court is not required to address the issue of prejudice. The miscarriage of justice exception to the procedural default doctrine also does not excuse petitioner's default because he has not alleged any facts to establish his actual innocence, nor has he presented any colorable evidence of his actual innocence.

Accordingly, the court will dismiss claims three (3), four (4), five (5), six(a) (6(a)), seven (7), eight (8), and nine (9) as procedurally barred.

**E.  Claim ten presents an issue of state law**

In claim ten (10), petitioner contends that the Superior Court erroneously denied his state motion for post-conviction relief by misapplying Superior Court Criminal Rule 61. See (D.I. 1, at 59-72)  It is well-settled that claims asserting a violation of a state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review.  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991); Smith v. Phillips, 455 U.S. 209, 211 (1982); Mullaney v. Wilbur, 421 U.S. 684, 691 (1975); Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997).  Further, the "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's

22

**collateral** proceedings does not enter into the habeas
calculation." Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.
1998)(emphasis added). Accordingly, because the instant claim
challenges the Superior Court's application of state procedural
rules in a state court collateral proceeding, the court will
dismiss the claim for failing to present an issue cognizable on
federal habeas review.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a
certificate of appealabilty. See Third Circuit Local Appellate
Rule 22.2. A certificate of appealability may only be issued
when a petitioner makes a "substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2). This showing is
satisfied when the petitioner demonstrates "that reasonable
jurists would find the district court's assessment of the denial
of a constitutional claims debatable or wrong." Slack v.
McDaniel, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that
petitioner is not entitled to federal habeas relief. Reasonable
jurists would not find these conclusions unreasonable.
Consequently, petitioner has failed to make a substantial showing
of the denial of a constitutional right, and a certificate of
appealability will not be issued.

23

## VI. CONCLUSION

For the foregoing reasons, petitioner's application for
habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate order will be entered.